UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ICON GROUPE, LLC, a Washington limited liability company, | Case No.: 3:12-CV-1114-AC |
| Plaintiff, | FINDINGS AND RECOMMENDATION |
| v. | |
| WASHINGTON COUNTY, a local county government within the State of Oregon; and ANDREW SINGELAKIS, in his official and individual capacities, | |
| Defendants. | |

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff Icon Groupe, LLC, ("Icon"), filed this action alleging defendants Washington

County ("County") and Andrew Singelakis ("Singelakis)(collectively "Defendants"), violated Icon's

constitutional rights to equal protection, procedural due process, and freedom of speech when they

Page 1 - FINDINGS AND RECOMMENDATION                                    *{SIB}*

failed to grant Icon's applications for permits to erect and maintain seventeen freestanding signs displaying the message "Celebrate the Holiday Safely – Happy Memorial Day".  (Compl. ¶ 11.) Defendants now move to dismiss or, in the alternative, stay this action pending the resolution of related state appellate proceedings.  Defendants assert that Icon has failed to allege viable claims based on equal protection, procedural due processes, and freedom of speech violations, and that Icon's due process claim is not ripe.

The court finds that Icon has failed to allege that similarly-situated entities were treated differently in support of the First Claim for Relief, is unable to allege a deprivation of a property interest in support of the Second Claim for Relief, and has adequately alleged a First Amendment violation in the Third Claim for Relief.  Accordingly, Defendants' motion to dismiss should be granted with regard Icon's First and Second Claims for Relief, with leave to Icon to add factual allegations identifying similarly-situated entities that were treated differently by Defendants in support of its equal protection claim, and should be denied with regard to Icon's Third Claim for Relief.  Further, the court finds that the state court mandamus proceedings will not dispose of the issues raised in this action and that Defendants' alternative motion for abstention and a resulting stay should be denied.

*Background*

Icon is a sign company engaged in applying for and maintaining freestanding signs within the State of Oregon.  (Compl. ¶ 3.)  From March to June, 2010, Icon filed seventeen permit applications with the County seeking the approval of freestanding signs to be located in unincorporated potions of the County (the "Applications").  (Compl. ¶ 11.)  Because the signs contained the message "Celebrate the Holiday Safely – Happy Memorial Day", Icon believed they

qualified for an exemption from the otherwise applicable size and height restrictions. (Compl. ¶ 14.) The exemption, found at section 414-5.9 of the County Community Development Code ("CDC") provided that "safety signs" identified as "[d]anger signs, trespassing signs, warning signs, traffic signs, memorial plaques, signs of historical interest, holiday signs, public and service information signs such as rest rooms, mailbox identification, [and] newspaper container identification" were "exempted from development permit requirement[s] and from the standards set forth above; however, a permit may be required as determined by the Building Official." (Compl. Ex. 2 at 6-7.)

Rather than approve the Applications, Singelakis, the director of the County's Land Use & Transportation Department, denied all of the Applications in two, substantially similar, one-page opinions. (Compl. ¶ 15.) The opinions stated that "Article XI[*sic*], section 8 of the Oregon Constitution precludes application of the content based exemptions cited in the application" and that the proposed signs exceeded the size and height provisions in the applicable zones. (Compl. ¶ 15.) Icon timely appealed the denials to the County's hearings officer, who failed take final action within the 120 days required under OR. REV. STAT. 215.427(1). (Compl. ¶ 16.) Icon then timely petitioned for writs of mandamus under OR. REV. STAT. 215.429, asking the Washington County Circuit Court for the State of Oregon to compel the County to approve all of the Applications. (Compl. ¶ 20.)

In a letter opinion issued on January 6, 2012, the state court found that under the plain language of the state statutes relied on by Icon in filing the appeal, and in the absence of evidence that the applications violated any substantive provision of the CDC as it existed at the time the applications were filed, the court was obligated to issue a peremptory writ requiring the County to approve the Applications and issue the requested permits to Icon. (Compl. Ex. 3 at 1.) The state

court, assuming that his ruling would be appealed, also addressed the issue of whether Defendants'

denial of the Application, based on what they perceived as an unconstitutional regulation, was

appropriate.  (Compl. Ex. 3 at 1-2.)  The state court explained that:

> [t]his being a Mandamus decision, the County can only rely on the constitutionality
> (or unconstitutionality) if by following CDC 414-5.9 the county official having to
> follow CDC 414-5.9 would either violate that [official']s oath of office or cause the
> official to be personally liable in some way.

(Compl. Ex. 3 at 1.)  Initially, the state court found that Singelakis could not be held personally liable

for enforcing the questionable exemption.  The state court then reasoned that because the

questionable exemption was not unconstitutional on its face, but only as applied by Defendants who

considered the contents of the proposed sign messages in deciding that the questionable exemption

did not apply, Defendants could not rely on the unconstitutionality of the questionable exemption

in denying the applications.  (Compl. Ex. 3 at 2.)  On June 5, 2012, the court entered a final

judgment issuing the peremptory writ.  (Compl. ¶ 20.)  Defendants appealed the state court ruling

and sought to stay enforcement of the judgment pending resolution of the appeal.  The appellate

court denied Defendants' motion for a stay and Defendants have since issued a few permits under

the Applications.

Icon filed this action on June 20, 2012, alleging that Defendants' action violated their equal

protection, procedural due process, and freedom of speech rights guaranteed by the United States

Constitution.  Icon alleges that Defendants' denial of, and failure to take final action on, the

Applications are based on Defendants' "discriminatory animus toward Icon and/or the class of

similarly situated private sign companies" and "distaste for the for-profit messages that Icon might

in the future put on the signs."  (Compl. ¶¶ 17-18.)  Icon further generally alleges that Defendants'

actions "lacked a rational relationship to a legitimate government interest" and that, "[o]n information and belief, had substantially the same applications been filed by another entity (for example, a nonprofit or civic group), the applications would have been approved." (Compl. ¶ 17.)

## Preliminary Procedural Matter

Icon asks the court to disregard arguments raised by Defendants for the first time in their reply brief. The case relied on by Icon in support of this request addressed a summary judgment motion in which the nonmoving party was not afforded the opportunity to respond to the argument and evidence offered for the first time by the moving party in their reply brief. *See Weaving v. City of Hillsboro*, No. 10-CV-1432-HZ, 2012 WL 526425, at *15 n.5 (D. Or. Feb. 16, 2012). The motion presently before the court is a motion to dismiss, not a motion for summary judgment. Additionally, Icon requested, and received, leave to file a surreply in which it responded to each of the new arguments. The court finds that Icon will not be prejudiced by the consideration of the arguments made for the first time in Defendants' reply brief and denies Icon's request to disregard these arguments.

## Legal Standard

A well-pleaded complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2) (2011). A federal claimant is not required to detail all factual allegations; however, the complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. While the court must assume that all facts alleged in a complaint are true and view them in a light most favorable to the nonmoving

party, it need not accept as true any legal conclusion set forth in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, a plaintiff must set forth a plausible claim for relief – a possible claim for relief will not do. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678); *Sheppard v. David Evans and Assoc.*, No. 11-35164, 2012 WL 3983909 at *4 (9th Cir. Sept. 12, 2012) ("The Supreme Court has emphasized that analyzing the sufficiency of a complaint's allegations is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679)).

*Discussion*

I. Equal Protection Clause

Defendants move to dismiss Icon's First Claim for Relief for violation of the Equal Protection Clause, arguing that Icon has failed to allege that Defendants' actions were intentionally directed solely at Icon or that Icon is similarly situated to others that were treated more favorably. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. In other words, states are required to treat all persons similarly situated in a like manner. *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). Consequently, to state a claim under the Equal Protection Clause, a plaintiff must establish that he was treated differently from other similarly situated individuals with respect to a governmental act, statute, or regulation.

A plaintiff generally alleges a violation of the Equal Protection Clause by asserting that they

are a member of a class made up of similarly-situated individuals and that defendants intentionally

acted in a way that infringes on the constitutional rights of the class as opposed to others, resulting

in disparate treatment. *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001). However,

the courts have also recognized that "an equal protection claim can in some circumstances be

sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she

has been irrationally singled out as a so-called 'class of one.'" *Gerhart v. Lake County, Montana*,

637 F.3d 1013, 1021 (9th Cir. 2011)(quoting *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601

(2008)(citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). A class-of-one action

may be maintained if a regulation is applied in a singular way to a particular individual. *Engquist*,

553 U.S. at 602. To succeed under both claims, a plaintiff must plead that the defendants

intentionally treated them differently from others similarly situated and that such treatment was

without a rational basis. *Id*. at 601.

Here, Icon alleges that it is a member of a class comprising companies engaged in the sign

business and that it was the policy and custom of Defendants to discriminate against sign companies

by failing to approve, or take final action on, applications filed by sign companies under the

exemptions found in the CDC. Icon further alleges it believes Defendants would have approved

substantially-similar applications filed by a different entity, such as a nonprofit or civic group. Icon

has not identified any sign company, other than itself, whose application for a safety sign was denied.

Additionally, although Icon generally states that its believes substantially-similar applications filed

by groups or individuals not in the sign business have, or would have been, approved, it fails to

allege any facts to support this conclusory statement.

While the court does not doubt that Defendants have approved other applications for safety

signs, Icon has failed to adequately allege facts to support this assumption. If, in fact, Icon was the first to apply for a safety sign under the exemption, it would be unable to prove that it was treated differently by Defendants with regard to the Applications, making its claim speculative rather than plausible. Accordingly, in the absence of factual allegations establishing that Defendants have approved other applications under the safety-sign exemption, Icon has failed to state a viable claim for violation of the Equal Protection Clause. See *O'Connor v. County of Clackamas*, No. 3:11-cv-1297-SI, 2012 WL 3756321, *11(D. Or. Aug. 28, 2012)(court dismissed Equal Protection Clause claim with leave to amend where plaintiff did not specifically identify any similar-situated individuals who were treated differently).

On the question of whether Icon has adequately alleged intentional treatment, the court finds sufficient to state a class-of-one claim Icon's allegations that the Applications met all requirements for approval under the safety-sign exemption, Defendants were obligated to enforce the sign code and approve the Applications, and Defendants issued opinions denying the Applications as well as refused to take final action on the Applications, all because of Defendants' animus toward Icon. Although a plaintiff must plead that a defendant's decision was intentional, the plaintiff need not show that the defendants were motivated by subjective ill will. *Gearhart*, 637 F.3d at 1013 (citing *Willowbrook*, 528 U.S. at 565). A class-of-one plaintiff must merely "show that the discriminatory treatment 'was intentionally directed just at him, as opposed . . . to being an accident or a random act." *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008)(quoting *Jackson v. Burke*, 256 F.3d 93, 96 (2nd Cir. 2001). Here, Icon has clearly alleged that Defendant intentionally rejected the Applications. Defendants reviewed the Applications and issued an opinion denying the Applications. This clearly alleges intentional conduct, not merely a random or accidental act. This,

coupled with allegations that Defendants approved all similar applications, and denied just Icon's, adequately states the intentional conduct necessary for a class-of-one claim.

Defendants' motion to dismiss Icon's First Claim for Relief for violation of the Equal Protection Clause should be granted. Icon should be given leave to amend the complaint to add factual support for the allegations that Defendants have, or would have, approved similar applications filed by applicants other than Icon under the safety-sign exemption.

## II.  Due Process Clause

In the Second Claim for Relief, Icon alleges that Defendants' failure to issue a final decision on the Applications within the time allotted by OR. REV. STAT. 215.427(1) violated Icon's right to due process.  Defendants argue the claim is not ripe for review as the rights to the permits sought in the Applications has not been fully adjudicated in state court.  Alternatively, Defendants assert Icon lost the right to claim that Defendants violated their due process rights when they filed a mandamus action in state court.  In their reply brief, Defendants contend, for the first time, that Icon fails to state a claim based on the absence of a protected property right or a deprivation of that right, and the inability to pursue claims for violations of both due process and freedom of speech.

The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. "The Due Process Clause forbids the governmental deprivation of substantive rights without constitutionally adequate procedure." *Shanks v. Dressel*, 540 F.3d 1082, 1090-91 (9th Cir. 2008).  To prevail on a procedural due process claim plaintiff must establish:  (1) a constitutionally protected liberty or property interest; (2) a deprivation of that interest by the government; and (3) the lack of adequate process. *Id*. at 1090.

"[R]andom and unauthorized acts" of a government employee in an administrative permitting process could form the basis of a procedural due process claim unless there was an opportunity for "prompt post-deprivation hearings." *Soranno's Gasco v. Morgan*, 874 F.2d 1310, 1317-18 (9th Cir. 1989). Due process requires the government to provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *accord Jones v. Flowers*, 547 U.S. 220, 226 (2006).

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972). While the Supreme Court has interpreted the terms liberty and property interest broadly in the context of the Fourteenth Amendment, it has recognized that "the range of interests protected by procedural due process is not infinite." *Roth*, 408 U.S. at 570.

Icon generally alleges that Defendants' denial and decision not to take action on the Applications "violated the County's own procedures and denied Icon an opportunity for a hearing", and that "Defendants' failure to take action on Icon's applications has delayed their approval and forced Icon to pursue other remedies, including of mandamus in Oregon state court, to protect its rights." (Compl. ¶¶ 16, 17, 19.) Icon also alleges that despite the state court peremptory writ approving the Applications issued on June 5, 2012, Defendants had not yet issued any permits as of the date the complaint was filed on June 20, 2012. (Compl. ¶ 20). Icon specifically alleges in the Second Claim for Relief that Defendants "intentionally failed to follow applicable state and local law and deprived Plaintiff of timely and adequate due process with respect to Plaintiff's protected

property interests in its sign applications and in its ability to lawfully construct those signs under applicable law." (Compl. ¶ 34.) These allegations, and the relatively short period of time between the issuance of the final order by the state court and the filing of the complaint, establish that Icon is asserting a procedural due process claim based only on Defendants' failure to issue a final ruling on the Applications during the 120-day period provided in OR. REV. STAT. 215.427(1), not on Defendants' failure to issue permits in light of the peremptory writ issued by the state court.

Defendants initially argue that because the issue of whether Icon is entitled to approval of the Applications is still pending in state court, Icon is unable to establish that a deprivation has occurred. Icon counters that under Oregon law, a state trial court's judgment is final even if it is appealed. Consequently, its rights to the permits sought in the Applications has been finally adjudicated and the question of whether Defendants violated Icon's constitutional rights by delaying the approval is properly before the court.

The Ninth Circuit has recognized that:

> procedural due process claims may in certain land use contexts be ripe even where the underlying substantive claims remain unripe due to the absence of a final decision regarding land use. *Harris v. City of Riverside*, 904 F.2d 497, 501 (9th Cir. 1990). However, such procedural due process claims ripen only when it is clear that a distinct deprivation of a constitutionally protected interest in liberty or property has already occurred, thereby warranting a federal court's consideration of the question of whether the deprived party received the process to which it was due.

*Guatay Christian Fellowship v. County of San Diego*, 670 F.3d 957, 984 (9th Cir. 2011). Here, because the allegations of the complaint, when considered in totality and in conjunction with the attached county rules, fail to allege a property interest in the desired permits or a distinct deprivation of that property interest, as required to state a valid claim under the Due Process Clause, the court recommends dismissal of this claim with prejudice.

Page 11 - FINDINGS AND RECOMMENDATION                                    *{SIB}*

A property interest sufficient to support a claim for procedural due process arises through, and is defined by, "existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already-acquired in specific benefits." *Roth*, 408 U.S. at 576. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id*. at 577. Property interests take many forms, such as an interest in continued receipt of welfare benefits and an interest in continued public employment under the terms of a contract. *Id*. at 576-77.

Icon alleges in the Complaint that:

> All 17 of Icon's applications were validly submitted and, when applying CDC 414-5 and 414-5.9, satisfied all requirements necessary for approval. The County and Singelakis lacked the right to deny Icon's completed applications. Defendants also did not have the right to fail to take final action on Icon's applications. The County and Singelakis failed to fairly review and approve Icon's applications in accordance with applicable local law.

(Compl. ¶14.) Taken on its face, this paragraph alleges that Icon had a legitimate claim of entitlement to the desired permits. However, Icon also alleges that Defendants failed to take "appropriate final action with respect to Icon's applications within the statutorily required 120-day period under Oregon Revised Statute 215.427(1)" and that "Icon timely petitioned for writs of mandamus under ORS 215.429 before any final action by the County, asking Washington County Circuit Court in the State of Oregon to compel approval of all 17 sign applications." (Compl. 16,

20).

The definitions applicable to OR. REV. STAT. 215.427(1) and 215.429 are found in OR. REV. STAT. 215.402, which provides that "permit" as used in OR. REV. STAT. 215.427(1) to 215.438 "means any discretionary approval of a proposed development of land under . . . county legislation or regulation . . . ." Icon's pursuit of remedies under OR. REV. STAT. 215.429 and allegation that Icon's applications fell within the parameters of OR. REV. STAT. 215.427(1) evidences an admission that the approval of the Applications was at the discretion of the County. In other words, Icon had only a unilateral expectation that the Applications would be approved and the desired permits issued, not an entitlement to the issuance of the permits. "An entitlement to a government permit exists when a state law or regulation requires that the permit be issued once certain requirements are satisfied." *Gerhart v. Lake County, Montana*, 637 F.3d 1013, 1019 (9th Cir. 2011). A plaintiff may also not rely on past practices in issuing a permit under similar circumstances to establish a constitutionally protected interest in a government benefit, such as a license or a permit. *Id*. at 1021 ("a government body's past practice of granting a government benefit is insufficient to establish a legal entitlement to the benefit.").

In addition to Icon's admission that approval of the Applications was within Defendant's discretion by filing for mandamus under OR. REV. STAT. 215.429, the language of the provisions of the CDC relied on by Icon in filing the Applications supports a finding that Defendants retained discretion to approve or deny applications for safety-based signs. First, section 414-5 of the CDC provides that "[t]he following signs are exempted from development permit[s] requirement and from the standards set forth above; however, a permit may be required as determined by the Building Official." Clearly, this language gives Defendants the discretion to determine whether a permit will

Page 13 - FINDINGS AND RECOMMENDATION                                        *{SIB}*

be required.  Second, section 414-5.9 describes the "safety-signs" covered by section 414-5 as "[d]anger signs, trespassing signs, warning signs, traffic signs, memorial plaques, signs of historical interest, holiday signs, public and service information signs such as rest rooms, mailbox identification, newspaper contained identification."  The generic nature of the description of what qualifies as a "safety-sign" under the CDC requires Defendants to exercise discretion in determining which signs fall within the section's scope.

The court finds that the allegations of the complaint, when viewed in their entirety, fail to allege facts to support Icon's claim of absolute entitlement to approval of the Applications and, instead, alleges facts requiring a determination that approval of the Applications was in the Defendants' discretion.  Accordingly, Icon is unable to allege a constitutionally protected property interest in support of its Due Process Clause claim.

Defendants also argue that Icon has failed to allege the requisite "deprivation" of protected right as required to state a procedural due process claim.  In support of its claim under the Due Process Clause, Icon alleges that Defendants "deprived Plaintiff of timely and adequate due process with respect to Plaintiff's protected property in its sign applications and in its ability to lawfully construct those signs under applicable law."  (Compl. ¶34.)  As discussed above, Icon's claim is based on a delay resulting from Defendants' failure to rule within 120 days of Icon's appeal of Defendants' denial of the Applications.  Icon argues that because several courts have assessed damages based on a defendants' delay in providing due process, delay is sufficient to establish a deprivation of a rights.  Icon's argument is not well taken.

Icon relies on *Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 588 (9th Cir. 1998), for the proposition that the elements of a due process claim are limited to: "(1) a protectible liberty or

property interest in obtaining the permit; and (2) a denial of adequate procedural protections" and that no showing of a deprivation is required. When read carefully, it is evident that the court in *Foss* identified the elements on which Foss's procedural due process hinged, not the *prima facie* elements of a procedural due process claim. The defendant had unequivocally denied Foss's application as untimely, clearly establishing the deprivation requirement. Icon's reliance on *Schneider v. County of San Diego*, 285 F.3d 784 (9th Cir. 2002), in support of its argument that nominal damages may support a due process claim, is also suspect. In *Schneider*, the court held that nominal damages were appropriate where a plaintiff had established he was entitled to judgment as a matter of law on a procedural due process claim. *Id*. at 794. Here, Icon is unable to establish a constitutional violation in the absence of the necessary deprivation of a protectible property interest. The assessment of nominal damages does not supply the requisite deprivation.

Finally, Icon references two cases in which the court allowed the assessment of damages based on a delay in allowing a terminated plaintiff a name-clearing in an employment context. The Seventh Circuit explained in *Endicott v. Huddleston*, 644 F.2d 1208 (7th Cir. 1980), that an employee whose term was not renewed based on published charges of dishonesty and immorality was entitled to an opportunity to clear his name in a properly-noticed hearing and that such employee was entitled to recover damages for losses suffered as a result of the first inadequate hearing, such as the cost incurred in obtaining the second hearing and injury to the employee's reputation during the time between his first and second hearings, if proven. Similarly, the court in *Lyons v. Barrett*, 851 F.2d 406 (D.C. Cir. 1988), advised that a plaintiff who is able to establish injury based on harm resulting from a five-year delay in obtaining a name-clearing hearing after termination from employment is entitled to damages to the extent he is able to prove such damages. Again, in both

these cases, the plaintiffs had to prove they had been deprived of their interest in maintaining their good name without due process before the court considered whether they had suffered any damage as a result of the delay in an adequately noticed and properly held hearing. Here, Icon has not established a *prima facie* case for violation of the Due Process Clause and, therefore, can not rely on with *Endicott* or *Lyons* in support of its argument that damages are recoverable for a mere delay in due process.

The allegations of the complaint establish that Defendants did not issue a final action during the 120-day period allowed under OR. REV. STAT. 215.427(1) and that Icon immediately thereafter filed a writ of mandamus in state court resulting in an writ ordering Defendants to issue the permits sought in the Applications. Icon was not deprived of any right it had to the permits requested in the Application as a result of Defendants' failure to act because the state court subsequently ordered Defendants to issue the desired permits. Defendants' failure to act merely delayed consideration of the Applications and issuance of the permits. As noted by Justices Scalia and Thomas in a concurring opinion in *City of Cuyahoga Falls v. Buckeye Community Hope Foundation*, 538 U.S. 188, 200 (2003), "[f]reedom from delay in receiving a building permit is not among [the] 'fundamental liberty interests' . . . the Due Process Clause protects."

The court finds that Icon's allegations that Defendants violated its constitutional rights to procedural due process by not issuing a final ruling within 120 days after Icon appealed the initial denial of the Applications does not amount to a sufficient deprivation of a fundamental right under the Due Process Clause. Icon is unable to state a viable claim for relief under the Due Process Clause and Icon's Second Claim for Relief should be dismissed with prejudice.

III.  First Amendment

Icon alleges in its Third Claim for Relief for free speech violations that "[t]he County's and Singelakis's intentional acts and omission have abridged Plaintiff's rights secured by the 1st and 14th Amendments to the U.S. Constitution and by applicable state and local law."  (Compl. ¶ 38.) Defendants assert these allegations do not identify what intentional acts or omissions Icon complains about or whether the claim is for prior restraint or regulation of commercial speech, and move to dismiss for failure to state a claim.  Defendants completely ignore other allegations in the complaint, which Icon incorporates by reference into the Third Claim for Relief.  Icon alleges that it submitted numerous application with the County for "safety signs" which qualified for the exemption found in CDC Section 414.5-9 and that Defendants' improperly denied such the Applications based on a concern that Icon would later use the signs to display for-profit messages.  (Compl. ¶¶ 11-12, 18.) Icon specifically alleges that Defendants' "initial denial and later decision to not take action on Icon's applications lacked a rational relationship to a legitimate government interest." (Compl. ¶17.) These allegations assert a claim based not on the provisions of the CDC, but rather on Defendants' distaste for Icon's possible future use of the "safety signs" for commercial speech and Defendants' disregard of the CDC to prevent the possibility of future commercial speech.  Accordingly, Icon is alleging that Defendants' denial of the Applications represented a deprivation of Icon's right to engage in noncommercial speech to prevent possible future commercial speech without a rational relationship to a legitimate government interest.  The question is whether these allegations state a viable claim under the First Amendment.

The First Amendment provides, in part, that "Congress shall make no law . . . abridging the freedom of speech."  U.S. CONST. Amend. I.  Under the due process clause of the Fourteenth

Amendment, the same prohibition applies to the states. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).

The First Amendment right to free speech is not immune to regulation or restriction by the states. However, the regulation or restriction must survive strict scrutiny and meet rigid standards to justify limiting protected speech. The United States Supreme Court has established two separate standards to be applied by this court; an extremely rigorous standard for noncommercial speech and a slightly lesser standard for commercial speech.

To justify a prior restraint on noncommercial speech, the states must establish that the regulation or restriction furthers sufficiently substantial and legitimate governmental interests and is narrowly drawn to serve those interests without unnecessarily impinging on a citizen's freedom of speech. *Schad v. Borough of Mount Ephraim*, 452 U.S. 61 (1981). The slightly less restrictive four-part test for determining the validity of a governmental restriction on commercial speech is as follows:

> (1) The First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial governmental interest, (3) directly advances that interest, and (4) reaches no further that necessary to accomplish the given objective.

*Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507 (1981)(citing *Central Hudson Gas & Electric Corp. v. Public Service Comm'n*, 447 U.S. 557, 770-773 (1980).

The court finds that Icon's allegations of a restriction on both noncommercial and commercial speech in the absence of a rational relationship to a legitimate government interest sufficiently state a claim for violation of the First Amendment. Defendants' motion to dismiss the Third Claim for Relief for failure to state a claim should be denied.

IV.  Abatement

In the event the court does not grant their motion to dismiss, Defendants move to abate consideration of the action pending final resolution of the mandamus action in state court. Defendants argue that the issues before the state court in the mandamus action are the same as those before the court in this action and that the court must defer to the state court on state law issues. Specifically, Defendants contend that the question of whether Defendants properly denied the Applications under the Oregon Constitution controls the question of whether Defendants properly denied the applications under the Constitution of the United States.   While failing to identify the precedent under which it seeks a stay in its opening memoranda, Defendants argue in its reply brief that abstention is appropriate under the doctrine created in *Colorado River Water Conservation. Dist. v. United States*, 424 U.S. 800, 814 (1976).

Generally, as between state and federal courts, the pendency of an action in state court does not bar proceedings concerning the same matter in the federal court having jurisdiction.  *McClellan v. Carlan*, 217 U.S. 268, 282 (1910).  Rather, federal courts have a "virtually unflagging obligation" to exercise their jurisdiction.  *Colorado River*, 424 U.S. at 817.  "This obligation is particularly weighty when those seeking a hearing in federal court are asserting . . . their right to relief under 42 U.S.C. § 1983."  *Tovar v. C.G. Billmeyer*, 609 F.2d 1291, 1293 (9th Cir. 1980).  However, for purposes of wise judicial administration, abstention by a federal court due to the presence of a concurrent state proceeding is permitted under certain "limited" and "exceptional" circumstances. *Colorado River*, 424 U.S. at 818.  The task of the federal court then becomes to ascertain whether there exists "exceptional' circumstances and the "clearest of justifications" that can suffice to justify the surrender of jurisdiction by the district court, not to find some substantial reason for the exercise

of that jurisdiction. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983).

Several factors are relevant to determining whether abstention under *Colorado River* is appropriate. First, however, is the dispositive factor of whether the state court judgment will resolve all of the issues before the federal court. *Holder v. Holder*, 305 F.3d 854, 870 (9th Cir. 2002). "[T]he existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes granting of a stay." *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993). The remaining non-exclusive factors include those originally considered by the Supreme Court in *Colorado River*: (1) whether either court has assumed jurisdiction over property to the exclusion of other courts; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which jurisdiction was obtained by the concurrent forums. *Colorado River*, 424 U.S. at 818-19. This list of considerations was subsequently expanded by the Supreme Court to include: (5) whether state or federal law provides the rule of decision on the merits; and (6) whether the state-court proceeding can adequately protect the rights of the parties. *Moses H. Cone*, 460 U.S. at 24-26. Finally, in the Ninth Circuit, courts also should consider the additional factor of whether exercising jurisdiction would promote forum shopping. *R.R. Street & Co. Inc. v. Transport Ins. Co.*, 656 F.3d 966, 979 (9th Cir. 2011).

The decision of whether a federal court should abstain from hearing a federal claim because of parallel state-court litigation does not rest on a "mechanical" application of these factors. *Moses H. Cone*, 460 U.S. at 16. Rather, when considering abstention under the *Colorado River* doctrine, a court should carefully balance these factors as they apply in a given case. *Id*. The weight of these factors may greatly vary from case-to-case, depending on the particular circumstances. *Id*. "No one

factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Colorado River*, 424 U.S. at 818-19.  However, any doubt as to whether a factor exists should be resolved against a stay.  *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990).

Icon's First Amendment claim should survive the motion to dismiss intact.  In the complaint, Icon alleges that Defendants violated his First Amendment rights based on Defendants' failure to follow the provisions of the CDC in denying the Applications. While the documents relating to the mandamus action make it clear that Defendants asserted the unconstitutionality of the CDC's content-based safety sign exclusion as a defense in state court, the same documents also make it clear that the constitutionality of the CDC exclusions, not Defendants' actions in failing to enforce the CDC exclusions, are at issue in state court.  Furthermore, the state court documents offered by the parties indicate that the constitutionality of the CDC provisions may never be addressed by the state court.

The trial court found that mandamus was appropriate in that the Applications were complete and Defendants did not grant the requested permits.  (Compl. Ex. 3 at 1.)  It then addressed the "next real issue" of "whether the court can or has to consider the constitutionality of Washington County's CDC 414-5.9. . . ."  (Compl. Ex. 3 at 1.)  The trial court found that the constitutionality of the CDC exclusion was not relevant in a mandamus proceeding initiated under  OR. REV. STAT. 215.429.  (Compl. Ex. 3 at 1.)  The trial court, expecting an appeal of its decision, further found that if the constitutionality of the CDC exclusion was properly before the court, it would find that CDC 414-5.9 was not unconstitutional on its face but was "unconstitutional as it has been applied by the County

on these permit applications." (Compl. Ex. 3 at 2.)  The trial court explained that:

> It appears clear from the evidence that had the [C]ounty just accepted the fact that ICON was asking for "safety sign" permits that the exemption would have applied and the County would have to grant the permits.  Moreover, by doing so the County would not have restrained or restricted any speech.  Instead, the County chose to look at the content and then after looking at the content exercise its discretion by determining that the permits were not "safety signs."  The County was in violation of the Oregon Constitution by doing so.

(Compl. Ex. 3 at 2.)

On appeal, the appellate court denied Defendants' motion to stay enforcement of the trial court judgment finding it unlikely that Defendants would prevail on appeal or that any harm to the public was strong enough to justify a stay.  (Req. For Judicial Notice, Ex. A at 2.)  The appellate court indicated it "tends to agree with appellant that, even if the Oregon Constitution is not mentioned in ORS 215.429, the circuit court, as a court of law with plenary jurisdiction, must always consider constitutional provisions.  However, for the reasons articulated by respondent, the court is doubtful that appellant may rely on its assertion that its own regulation is unconstitutional.  (Req. For Judicial Notice, Ex. A at 1-2.)

The state court rulings reveal that the state court may never address the constitutionality of the CDC exclusion.  In the event the state court does address the constitutional issues raised by Defendants, the court will consider the constitutionality of the CDC exclusion, not the constitutionality of Defendants' actions in denying the Applications despite the provisions of the CDC exclusion.  In other words, the court will consider the constitutionality of the CDC exclusion on its face, not as applied, which is the issue raised by Icon in the action filed in this court. Therefore, any ruling on the constitutional issues raised in the state court will not resolve those before the court in this action.

Similarly, assuming that Icon is able to allege factual support for the assertion that Defendants treated similarly-situated entities or individuals in a different manner in support of its equal protection claim, the issues raised in that claim are not before the state court. The mandamus action alleges only that Defendants were obligated to approve the Applications under the CDC exclusion. The question of whether Defendants intentionally treated Icon differently from others similarly situated and that such treatment was without a rational basis will remain unanswered even after the state court resolves the mandamus action.

The court finds that substantial doubts exists with regard to whether the state court proceeding will resolve all of the issues before this court. These findings, considered in conjunction with the extremely high burden a party seeking abstention faces in a Section 1983 action, necessitates retention of jurisdiction over this action. Accordingly, the court recommends Defendants' request that this court abstain from litigating the issues raised by Icon in deference of the state court proceeding be denied.

*Conclusion*

Defendants' motion (#13) to dismiss should be GRANTED with regard Icon's First and Second Claims for Relief, with leave to Icon to add factual allegations identifying similarly-situated entities that were treated differently by Defendants in support of the equal protection claim alleged in Icon's First Claim for Relief, and DENIED with regard to Icon's Third Claim for Relief. Defendants' alternative motion for abstention and a resulting stay should be DENIED.

<u>Scheduling Order</u>

The Findings and Recommendation will be referred to a district judge for review. Objections, if any, are due **June 4, 2013**. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 20th day of May, 2013.


_____/s/ John V. Acosta_____
JOHN V. ACOSTA
United States Magistrate Judge