UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

ICON GROUPE, LLC, a Washington
limited liability company,

                         Plaintiff,

      v.

WASHINGTON COUNTY, a local
county government within the State of
Oregon; and ANDREW SINGELAKIS,
in his official and individual  capacities,

                         Defendants.

_____

Case No.: 3:12-CV-1114-AC

OPINION AND ORDER

ACOSTA, Magistrate Judge:

*Introduction*

     In this Section 1983 action, Plaintiff Icon Groupe, LLC, ("Icon"), alleges defendants

Washington County ("County") and Andrew Singelakis ("Singelakis)(collectively "Defendants"),

violated Icon's constitutional right to freedom of speech when they failed to grant Icon's applications

for permits to erect and maintain seventeen freestanding signs displaying public safety messages, such as "Celebrate the Holiday Safely – Happy Memorial Day". (Am. Compl. ¶¶ 2, 11.) Defendants move for summary judgment arguing their actions did not result in a violation of Icon's right to freedom of speech, and that even if such violation occurred they are entitled to absolute or qualified immunity.

The court finds Defendants' denial of the applications was based on content-neutral restrictions on time, place, and manner found in the County's applicable regulations and did not violate Icon's free speech rights. Because no constitutional violation occurred, the court need not address Defendants' immunity arguments. Accordingly, Defendants' motion for summary judgment is granted.[1]

*Background*

The facts underlying this action are not in dispute. Icon is a sign company engaged in applying for and maintaining freestanding signs within the State of Oregon. (Am. Compl. ¶ 3.) From March to June, 2010, Icon filed seventeen permit applications with the County seeking the approval of freestanding signs to be located in unincorporated portions of the County (the "Applications"). (Am. Compl. ¶ 11.) Because the signs contained safety messages, Icon believed they qualified for an exemption from otherwise applicable size and height restrictions. (Am. Compl. ¶¶ 11, 12, 14.) The exemption, found at section 414-5.9 of the County Community Development Code ("CDC") provided that "safety signs" identified as "[d]anger signs, trespassing signs, warning signs, traffic signs, memorial plaques, signs of historical interest, holiday signs, public and service

---

[1]The parties have consented to jurisdiction by magistrate judge in accordance with 28 U.S.C. § 636(c)(1).

information signs such as rest rooms, mailbox identification, [and] newspaper container identification" were "exempted from development permit requirement[s] and from the standards set forth above; however, a permit may be required as determined by the Building Official" (the "Exemption"). (Isaak Decl. Ex. A at 6-7.)

Rather than approve the Applications, Singelakis, the director of the County's Land Use & Transportation Department, denied all of the Applications in two, substantially similar, one-page letters issued on June 8, 2010, and June 21, 2010, respectively. (Am. Compl. ¶ 15.) The letters stated that "Article [I],[2] section 8 of the Oregon Constitution precludes application of the content based exemptions cited in the application" and that the proposed signs exceeded the size and height provisions in the applicable zones. (Isaak Decl. Exs. D, E.) Icon timely appealed the denials to the County's hearings officer ("Hearings Officer"), who failed take final action within the 120 days required under OR. REV. STAT. 215.427(1). (Am. Compl. ¶¶ 16, 17.) Icon timely petitioned for writs of mandamus under OR. REV. STAT. 215.429, asking the Washington County Circuit Court for the State of Oregon to compel the County to approve all of the Applications. (Am. Compl. ¶ 20.)

During the period Icon's appeal, and then petition, were pending, the Hearings Officer and Oregon's Land Use Board of Appeals ("LUBA"), considered and ruled on a virtually identical issue. Between March and May of 2010, Onsite Advertising Services, LLC, filed sixteen permit applications for freestanding double-sided billboard signs with the County. *Onsite Adver. Servs., LLC v. Washington County*, 63 Or. LUBA 414 (2011), *aff'd. without opinion*, 246 Or. App. 82 (2011), *rev. denied*, 351 Or. 586 (2012). On June 8, 2010, the County's planning director ("Planning Director") denied all of the applications in decisions which included the statement:

---

[2]The letters mistakenly reference Article XI, rather than Article I.

"Article [I], section 8 of the Oregon Constitution precludes application of the content based exemptions cited in the application." *Id.* at 417.  The Planning Director additionally found the proposed signs did not comply with other provisions of the CDC.  *Id.*  Onsite appealed the decisions to the Hearings Officer.

On July 20, 2010, the County's Board of Commissioners (the "Board") adopted Ordinance 735, which removed all content-based distinctions in Section 414-5 of the CDC, including the Exemption.  *Id.*  Ordinance 735 specifically provided that, to the extent allowed by law, the changes adopted in the ordinance applied to all sign applications received on or after January 1, 2010.  *Id.*  The Hearings Officer upheld the Planning Director's denial of Onsite's applications on November 29, 2010.  *Id.* at 418. Onsite then appealed the decision to LUBA.

In an opinion dated June 22, 2011, LUBA noted Onsite and the County "apparently agree that some or all of the CDC 414-5.9 exemptions are based on the content of the sign and to that extent CDC 414-5 runs afoul of Article 1, Section 8 of the Oregon Constitution" and relied on this concession in addressing Onsite's assignments of error.  *Id.* at 420.  It is unclear whether Icon, who intervened on the side of the County, took any position on the constitutionality of the Exemption.[3]

The primary question before LUBA was how to properly consider Onsite's applications assuming the Exemption was unconstitutional.  Onsite argued the unconstitutionality of the Exemption rendered all of Section 414 unconstitutional, requiring the entire section be severed.  *Id.* at 420-21.  If accepted, this argument would effectively eliminate any regulation of signage by the County and require the approval of all pending sign applications filed prior to July 20, 2010, the

---

[3]Icon did argue LUBA could decide the issues before it without addressing the constitutionality of the Exemption.  *Id.* at 420.

effective date of Ordinance 735.  *Id*. at 422.  The County argued only the Exemption should be severed, subjecting all sign applications to the regulations set forth in the remaining CDC sections, consistent with Ordinance 735.  *Id*. at 422.

LUBA relied on statutory and case law, and the County's representation of their position as set forth in the CDC and Ordinance 735, in finding only the Exemption should be severed.  LUBA explained Oregon statutes presume when part of a statute is held unconstitutional the legislature intended the remaining parts to remain in effect unless the statute specifically provides otherwise or the remaining parts were not intended, or are not able, to stand on there own.  OR. REV. STAT. 174.040 (2013).  This presumption applies equally in determining whether "part of an ordinance, if held to be unconstitutional, should be severed from the remaining parts." *Id*. at 421 (quoting *City of Portland v. Dollarhide*, 300 Or. 490 (1986).  LUBA noted the County adopted a severability clause, which it considered to express "an even stronger preference to sever portions of the CDC found to be unconstitutional and continue to apply the constitutional portions of the CDC." *Id*. at 421.  Finally, LUBA reasoned:

> [g]iven the choice of (1) severing CDC Section 414 in its entirety, and leaving signs unregulated, or (2) severing CDC 414-5.9, and leaving those formerly unregulated signs subject to regulation unless and until a constitutional way to exempt some or all of those signs could be adopted, Ordinance 735 strongly suggests that the board or court commissioners would have preferred to sever CDC 414-5.9.

*Id*. at 426.  LUBA affirmed the Hearings Officer's conclusion that only the Exemption should be severed, leaving the remaining sign regulations in effect.  *Id*. at 427.  LUBA also agreed with the Hearings Officer's conclusion that the signs identified in Onsite's application are prohibited by other provisions in the CDC and, therefore, were properly denied.  *Id*. at 428-31.

Six months later, the state court issued a decision on the Icon petition.  In a letter opinion

issued on January 6, 2012, the state court found that under the plain language of the state statutes upon which Icon based its petition, and in the absence of evidence the Applications violated any substantive provision of the CDC as it existed at the time the Applications were filed, the court was obligated to issue a peremptory writ requiring the County to approve the Applications and issue the requested permits to Icon (the "State Ruling"). (Isaak Decl. Ex. J at 4.) The state court, assuming the State Ruling would be appealed, also addressed the issue of whether Defendants' denial of the Applications, based on what they perceived as an unconstitutional regulation, was appropriate. (Isaak Decl. Ex. J at 4-5.) The state court explained that:

> [t]his being a Mandamus decision, the County can only rely on the constitutionality (or unconstitutionality) if by following CDC 414-5.9 the county official having to follow CDC 414-5.9 would either violate that [official']s oath of office or cause the official to be personally liable in some way.

((Isaak Decl. Ex. J at 4.) Initially, the state court found Singelakis could not be held personally liable for enforcing the questionable exemption. The state court then reasoned that because the questionable exemption was not unconstitutional on its face, but only as applied by Defendants who considered the contents of the proposed sign messages in deciding that the Exemption did not apply, Defendants could not rely on the unconstitutionality of the questionable exemption in denying the Applications. (Isaak Decl. Ex. J at 4.) On June 5, 2012, the court entered a final judgment issuing the peremptory writ. (Isaak Decl. Ex. J at 1-3.) Defendants appealed the State Ruling and sought to stay enforcement of the judgment pending resolution of the appeal. The appellate court denied Defendants' motion for a stay, and Defendants have since issued a few permits under the Applications.

Icon filed this action on June 20, 2012, alleging Defendants' actions violated their equal

protection, procedural due process, and freedom of speech rights guaranteed by the United States Constitution.  On April 4, 2014, after this court dismissed Icon's equal protection and due process claims, Icon filed an Amended Civil Rights Complaint stating a single claim for violation of its right to free speech ("Amended Complaint").  *Icon Groupe, LLC v. Washington County*, 948 F. Supp. 2d. 1202 (D. Or. 2013).  In the Amended Complaint, Icon alleges Defendants' denial of, and failure to take final action on, the Applications are based on Defendants' "distaste for the for-profit messages that Icon might in the future put on the signs."  (Am. Compl. ¶ 18.)  Icon further alleges that "despite the availability of less restrictive alternatives, [Defendants] nonetheless took the most restrictive course of denying all of Icon's applications and then not acting on Icon's administrative appeals."  (Compl. ¶ 17.)

*Preliminary Procedural Matters*

The parties dispute the effect of the State Ruling in light of the pending appeal.  Defendants assert the court should abstain from reaching issues addressed in the State Ruling to avoid inconsistent rulings as those issues are currently on appeal.  Icon argues the pendency of the appeal has no effect on this action and that issue preclusion attaches to the State Ruling.  Specifically, Icon contends this court is obligated to give preclusive effect to the State Ruling finding the relevant section constitutional and Defendants not free to base decisions on their own interpretation of the Oregon constitution.

When the effect of a state court judgment is at issue, federal courts must apply the law of the forum state to determine the preclusive effect of the judgment.  *Migra v. Warren City Sch. Dist. Bd. of Ed.*, 465 U.S. 75, 84 (1984).  In Oregon, the pendency of an appeal does not prevent a judgment from operating as *res judicata* or collateral estoppel.  *Ron Tonkin Gran Turismo, Inc. v. Wakehouse*

*Motors, Inc.*, 46 Or. App. 199, 207 (1980).  Consequently, the mere fact the State Ruling is currently on appeal does not prevent it from operating as *res judicata* or collateral estoppel.

Collateral estoppel, alternatively referred to as issue preclusion, arises when an issue of ultimate fact has been determined in a prior proceeding.  *Nelson v. Emerald People's Util. Dist.*, 318 Or. 99, 102-103 (1994).   The premise is that if "one tribunal has decided an issue, the decision on that issue may preclude relitigation of the issue in another proceeding."  *Fisher Broadcasting v. Dep't. of Revenue*, 321 Or. 341, 347 (1995).  For issue preclusion to apply, the issues in the two proceedings must be identical and essential to a final decision on the merits in the first proceeding. *Nelson*, 318 Or. at 104 (citations omitted).[4]  The party asserting issue preclusion bears the burden of proof on these two requirements.  *Thomas v. U.S. Bank Nat'l Ass'n*, 244 Or. App. 457, 469 (2011).

Oregon law imposes a "strict standard for the 'identity of issues' requirement and require[s] that 'the precise question was raised and determined in the former suit.'"  *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 1007 (9th Cir. 2007) (quoting *State v. Hunt*, 161 Or. App. 338, 985 P.2d 832 (1999)).  In a previous motion to abate this action pending final resolution of the mandamus action, Defendants argued the issues before the state court in the mandamus action were the same as those before the court in this action, and thus the court must defer to the state court on state law issues.[5] The court denied this request, finding the constitutional issues raised in the mandamus action were

_____

[4]Additionally, the issue must be actually litigated in a the appropriate type of proceeding which provided the parties a full and fair opportunity to be heard and the parties to the two actions are in privity, none of which are at issue here.  *Nelson*, 318 Or. at 104.

[5] In their summary judgment briefing, Defendants appear to renew their request to abate this action pending resolution of the state mandamus action.  For the reasons set forth herein and in the previous decision, the court again denies this request.

not the same as those alleged in the instant action. *Icon Groupe,* 948 F. Supp. 2d. at 1216.   In the mandamus action, Defendants defended their denial, or failure to approve, the Applications based on their view the Exemption was content-based and, therefore, unconstitutional.  In other words, the constitutionality of the Exemption was pivotal to Defendants' substantive defense.  Here, Icon claims Defendants' denial of the Applications violated Icon's rights to freedom of speech under the United States Constitution.   The constitutionality of the Exemption is not an issue in this action. Accordingly, the court again finds the issues in the two proceedings are not identical.

The court also noted the State Ruling did not rely on Defendants' asserted defense based on the constitutionality of the Exemption, and that this issue may never be addressed by the state court. *Id*.  The State Ruling squarely relied on an analysis of the propriety of a mandamus action in finding Defendants improperly denied the Applications.  The trial court then considered whether it "can or has to consider the constitutionality of Washington County's CDC 414-5.9 when the County raises the issue," and determined it was not relevant.  (Isaak Decl. Ex. J at 4.)  However, in light of the likelihood of an appeal of the State Ruling, the trial court explained that if the constitutionality of the Exemption was properly before the court, it would find the Exemption was not unconstitutional on its face but was unconstitutional as applied by the County on the Applications because the County considered the content of the signs sought in the Application.  (Isaak Decl. Ex. J at 4-5.)  The court concluded:

> In sum, in a mandamus action of this type the court is limited to looking for violations of a substantive provision of the County's comprehensive plan or land use regulations.  ORS 215.429(5).  No evidence was presented of any such violations. Accordingly, the court must and does issue a peremptory writ allowing Icon's applications for "safety sign/holiday signs".

The state court clearly relied solely on the procedural technicalities of the mandamus action

in reaching its ultimate decision in the State Ruling.  The discussion of the constitutionality of the Exemption was not essential to a final decision on the merits in the mandamus proceeding, but merely dicta.  *See United States v. Crawley*, 837 F.2d 291, 292-93 (7th Cir. 1988) (providing various definitions of dicta); *Hood v. Custom Homes, LLC v. Illinois Nat'l Ins. Co.*, Civil No. 08-1506-JE, 2009 WL 1531784, at *4  (D. Or. May 26, 2009) (an inclination is not a holding and is, therefore, dicta); *Dep't of Revenue v. Marks*, TC 4797, 2009 WL 3617493, at *9 (Or. Tax. Ct. Nov. 3, 2009) (hypothetical discussion of the outcome of the application of a test that the court rejected is the most obvious kind of dicta).  Accordingly, collateral estoppel does not apply to the discussion of the constitutionality of the Exemption in the State Ruling.

## Legal Standard

Summary judgment is appropriate where  the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a) (2012).  Summary judgment is not proper if material factual issues exist for trial.  *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial.  *Id*. at 324.  A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements.  *Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).  Thus, summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir. 1981).

However, deference to the nonmoving party has limits. A party asserting that a fact cannot be true or is genuinely disputed must support the assertion with admissible evidence. FED. R. CIV. P. 56(c) (2012). The "mere existence of a scintilla of evidence in support of the [party's] position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations marks omitted).

## Discussion

In its initial complaint, Icon alleged that "[t]he County's and Singelakis's intentional acts and omissions have abridged Plaintiff's rights secured by the 1st and 14th Amendments to the U.S. Constitution and by applicable state and local law." (Compl. ¶ 38.) Icon additionally alleged that Defendants' "initial denial and later decision to not take action on Icon's applications lacked a rational relationship to a legitimate government interest." (Compl. ¶17.) The court found these "allegations of a restriction on noncommercial and commercial speech sufficiently state a claim for violation of the First Amendment under *Reed v. Town of Gilbert*, 707 F.3d 1057 (9th Cir. 2013) and

*Central Hudson, Gas & Electric Corp. v. Public Service Comm'n of New York*, 447 U.S. 557, 100 S. Ct. 2324, 65 L. Ed. 2d 341 (1980), respectively." *Icon Groupe*, 948 F. Supp. 2d at 1205.  In the Amended Complaint, Icon more specifically alleges that Defendants violated their constitutional rights in four particulars:  1) Singelakis's stated reason for denying the Applications was an impermissible purpose; 2) Defendants did not consider or take available less restrictive alternatives; 3) the County maintains an unwritten policy giving County officials standardless and arbitrary discretion to restrict free speech; and 4) the stated reason for denying the Applications was pretextual.  (Am. Compl. ¶¶ 25-44.)

In their motion for summary judgment, Defendants characterize Icon's claim as a retaliation claim – that Defendants retaliated against Icon for attempting to engage in protected activity. Defendants then argue Icon is unable to establish the *prima facie* elements of such a claim, including evidence that Icon was engaged in protected activity; Defendants engaged in conduct that would chill such activity; a causal relationship between Defendants' conduct and any adverse impact Icon's protected activity; and actual bias.  The allegations of Icon's complaints, the arguments made in the prior motion to dismiss, and the court's ruling on the motion to dismiss make clear Icon is not pursuing a retaliation claim, but rather a free speech claim based on regulations or restrictions on Icon's right to engage in both commercial and noncommercial speech.  Accordingly, the court will consider Icon's allegations, and Defendants' arguments, solely in the context of a free speech claim.

The First Amendment provides, in part, that "Congress shall make no law . . . abridging the freedom of speech."  U.S. CONST. Amend. I.  Under the due process clause of the Fourteenth Amendment, the same prohibition applies to the states.  *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).

The First Amendment right to free speech is not immune to regulation or restriction by the states. However, the regulation or restriction must survive strict scrutiny and meet rigid standards to justify limiting protected speech. The United States Supreme Court has established two separate standards to be applied by this court: an extremely rigorous standard for noncommercial speech and a slightly lesser standard for commercial speech.

To justify a prior restraint on noncommercial speech, the states must establish that the regulation or restriction furthers sufficiently substantial and legitimate governmental interests and is narrowly drawn to serve those interests without unnecessarily impinging on a citizen's freedom of speech. *Schad v. Borough of Mount Ephraim*, 452 U.S. 61 (1981). The slightly less restrictive four-part test for determining the validity of a governmental restriction on commercial speech is as follows:

> (1) The First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial governmental interest, (3) directly advances that interest, and (4) reaches no further than necessary to accomplish the given objective.

*Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507  (1981)(citing *Central Hudson Gas & Electric Corp. v. Public Service Comm'n*, 447 U.S. 557, 770-773 (1980)).

As the party regulating the speech at issue, Defendant has the burden of affirmatively establishing the elements supporting the constitutionality of the CDC. *Desert Outdoor Adver. Inc. v. City of Moreno Valley*, 103 F.3d 814, 819 (9th Cir. 1996). Defendants have not presented any evidence of their substantial government interest in regulating signage or how the CDC directly advances that interest. Accordingly, Defendants have failed to meet their burden which, in most instances, would require denial of their motion for summary judgment. *Id*. However, Icon has not

contested the constitutionality of the CDC and has, in fact, argued the Exemption is constitutional. Even though the constitutionality of the CDC's time, place, and manner restrictions on commercial and non-commercial speech is not at issue, the court will analyze the constitutionality of these restrictions under the generally acknowledged governmental interests and the County's promotion of those interests, as background for the discussion of Icon's allegations that Defendants' denial of the Applications based on the unconstitutionality of the Exemption violated its free speech rights.

Federal courts routinely recognize beauty and safety as significant governmental interests in the context of freedom of speech claims relating to signs. *Reed v. Town of Gilbert, Az.*, 587 F.3d 966, 979 (9th Cir. 2009) (aesthetics and traffic and pedestrian safety readily recognized as significant government interests). *See also Metromedia*, 507 U.S. at 415 (identifying City's interest in safety and esthetics as "legitimate"); *Get Outdoors II, LLC v. City of San Diego, CA*, 506 F.3d 886, 893 (9th Cir. 2007)("The Supreme Court has recognized that a city's interests in traffic safety and aesthetics are sufficient government interests for the purposes of this analysis."); *G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064, 1072 (9th Cir. 2006)("Against the backdrop of numerous decisions of the Supreme Court and this court, we do not doubt that Lake Oswego's interest in its appearance and the safety of the public are significant and well established."); *Nat'l Adver. Co. v. City of Orange*, 861 F.2d 246, 249 (9th Cir. 1988) ("Under *Metromedia*, the City's interests in traffic safety and aesthetics are sufficient to justify continued content-neutral regulation of the noncommunicative aspects of billboards, such as size, spacing and design.")  It is equally well established that the government "may impose reasonable restrictions on the time, place, or manner of engaging in protected speech provided that they are adequately justified without reference to the content of the regulated speech." *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 428

(1993) (quotation marks and citation omitted).  Such restrictions "appear to actually advance the aesthetic and safety interest by limiting the size, duration and proliferation of signs." *Reed*, 587 F.3d at 980.  However, the restrictions must be "narrowly tailored" to further the governmental interest while providing "ample alternative channels for communication of the information."  *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).  Courts "are cautioned against invalidating government regulations for failing to leave open ample alternative channels unless the regulations foreclose 'an entire medium of public expression across the landscape of a particular community or setting.'" *G.K. Ltd. Travel*, 436 F.3d at 1074 (quoting *Colacurcio v. City of Kent*, 163 F.3d 545, 555 (9th Cir. 1998).

The CDC regulates the size, location, and height of signs allowed within the County.  These limitations further the generally recognized governmental interest while allowing the public to communicate information through alternate channels – on signs that comply with the CDC limitations.  The CDC does not foreclose all avenues of communication.  Accordingly, based on the generally accepted governmental interest of aesthetics and safety, the limitations on the size, location, and height of signs within the County do not impose an unreasonable burden on a citizen's freedom of speech and do not violate the Constitution.

Icon applied for signs that fell within the Exemption based on the message communicated on the sign.  The Applications sought approval for signs communicating non-commercial speech which exceeded the size and height limitations imposed on commercial speech.  Defendants, concerned the Exemption was content-based and, therefore, unconstitutional, effectively severed the Exemption from the CDC and evaluated the Applications under the other provisions of the CDC. Because Icon sought permits for signs that did not comply with the restrictions imposed by the

County on all other forms of speech, Defendants denied the Applications. Icon was not prevented from communicating its message entirely, but was prevented only from communicating its message on signs that exceeded the limitations set forth in the CDC.

Defendants applied the CDC in a content-neutral manner by imposing the same restrictions on all signs without considering the content of the message communicated. Accordingly, Defendants' denial of the Applications for violation of the CDC time, place, and manner restrictions did not violate Icon's right to freedom of speech. This holding is consistent with *Onsite*, in which LUBA assumed the Exemption was unconstitutional and found the Exemption should be severed from the CDC, and the sign applications considered under the remaining CDC provisions. Onsite's sign applications, which may have qualified under the Exemption, were evaluated under the remaining provisions of the CDC and denied based on their failure to comply with the time, manner, and place restrictions for non-exempt signs. Defendants followed the same method of analysis here.

As noted above, Icon does not argue the limitations on the size, height, and location of signs found in the CDC are too restrictive, do not further legitimate government interests, or are unconstitutional on their face. In fact, Icon does not contend the CDC provisions, including the Exemption, are unconstitutional. Rather, Icon argues Defendants' justification for denying the Applications supports their claim of a constitutional violation. Specifically, Icon argues Defendants' denial of the Application was: 1) premised on an impermissible purpose; 2) not based on a consideration of less restrictive alternatives; 3) a standardless and arbitrary exercise of discretion; and 4) a pretextual restriction on speech.

I.  Impermissible Purpose

Icon asserts the only reason Singelakis denied the Applications was his conclusion the

Exemption violated the Oregon Constitution.  This is not supported by the record.  In the letters

denying the Applications, Singelakis specifically considered the Applications under the remaining

provisions of the CDC after stating the "Oregon Constitution precludes application of the content-

based exemptions cited in the application."  In his June 8, 2010 letter, he explains:

> The application is DENIED for failure to comply with the following clear and
> objective standards
>
> > 1    Except for a sign in conjunction with a commercial or
> > industrial center complex, the maximum sign size
> > permitted in the CDC is 300 square feet.
> >
> > 2    The proposed location is in the NC district.  The
> > maximum sign size in this district is 35 square feet
> >
> > 3.    The maximum sign height is 28 feet in the NC
> > district.

Isaak Decl. Ex. D at 1.)  He similarly explains in his June 21, 2010 letter:

> The application is DENIED for failure to comply with the following clear and
> objective standards:
>
> > 1.    Except for a sign in conjunction with a commercial or
> > industrial center complex, the maximum sign size
> > permitted in the CDC is 300 square feet.
> >
> > 2.    The proposed location is in the IND district.  The
> > maximum sign size in this district is 50 square feet

Isaak Decl. Ex. E at 1.)   In his deposition, Singelakis represented that while the County initially

found the Exemption was unconstitutional, he also determined the Applications "did not meet the

– the signs did not meet the dimensional requirements of the Community Development Code district

in which it was located." (Isaak Decl. Ex. B at 9.) Steve Conway ("Conway")[6] similarly represented

---

[6]Conway appears to work for the County but is not clear in what capacity.

the County decided to apply its dimensional standards to the Application because the Exemption was unlawful.  (Isaak Decl. Ex. C at 7)

It is clear Singelakis did not deny the Applications solely because he considered the Exemption to be content-based and, therefore, unconstitutional.  In fact, once the County decided the Exemption was unconstitutional, Signelakis severed the Exemption from the CDC, analyzed the Applications under the remaining provisions, and found they were not in compliance.  Therefore, Singelakis's denial of the Application was based, at least in part, on a finding the Applications did not comply with the CDC's constitutional restrictions on time, place, and manner.

Icon also argues a local government is not entitled to enforce only the portion of the governing regulations it deems constitutional.  The *Onsite* decision addressed this exact issue.  There, the defendants, with Icon intervening on behalf of defendants, argued the proper way to handle a provision believed to be unconstitutional is to sever the provision and apply the remaining sections.  The Ninth Circuit reached similar conclusions after determining portions of a sign ordinance were unconstitutional.  *See Valley Outdoor, Inc. v. County of Riverside*, 337 F.3d 1111, 1114 (9th Cir. 2003)(court severed unconstitutional "grandfather" provision which relied on content and found permits were properly denied as proposed signs were illegal under constitutional and severable content-neutral zoning, size and height restrictions found elsewhere in the ordinances); *Nat'l Adver.*, 861 F.2d at 251 (City's rejection of applications because signs exceeded "maximum size and height limitations and violated other restrictions unrelated to the invalid sections of the sign ordinance" was allowed).  Granted, the question of whether the Exemption itself is unconstitutional has not been determined and is not before this court.  However, the cases support a conclusion that where a portion of a sign code is considered to be unconstitutional based on content, a municipality

may rely on the remaining severable and constitutional content-neutral time, place, and manner restrictions to properly reject the request for signs.

Icon argues the Applications were proper under the Exemption and that Defendants' refusal to enforce the Exemption and approve the Application as exempt from the other provisions of the CDC was a violation of its constitutional rights to freedom of speech.  The Constitution does not give Icon an unfettered right to the approval of the Applications.  The Constitution allows municipalities to restrict the time, place, and manner in which its citizens may practice their First Amendment right to free speech, provided those restrictions are content neutral, narrowly tailored, and do not effectively prevent the ability to communicate a desired message.  Icon has identified no authority supporting its argument that  once a municipality enacts legislation exempting certain signs from otherwise constitutional limitations, any applicant seeking approval for signs qualifying for such exemption has a constitutional right to such approval.  Additionally, this court specifically found in its previous Findings and Recommendation that "Icon had only a unilateral expectation that the Applications would be approved and the desired permits issued, not an entitlement to the issuance of the permits." *Icon Groupe,* 948 F. Supp. 2d. at 1211.  Accordingly, the court finds Defendants' rejection of the Applications for failure to comply with the constitutional time, place, and manner limitations found in the remainder of the CDC was based on a permissible purpose.

## II.  Consideration of Less Restrictive Alternative

Icon alleges Defendants took the most restrictive course of denying the Applications and then failing to act on Icon's appeals, rather than approving the Applications and addressing the constitutionality of the Exemptions later.  Icon again relies on its assertion that Defendants' sole justification for denying the Applications was their concern about the constitutionality of what they

considered a content-based exclusion.  As noted above, Defendants did not deny the Applications on this ground alone. After noting concern about the Exemption, Singelakis evaluated the Applications under the remaining provisions of the CDC, found the Applications requested approval for signs which did not conform to the time, place, and manner restrictions set forth therein, and denied the Applications on this basis. "[W]hen a content-neutral regulation does not entirely foreclose any means of communication, it may satisfy the tailoring requirement even though it is not the least restrictive or least intrusive means of serving the statutory goal." *Hill v. Colorado*, 530 U.S. 703, 726 (2000). *See also Ward*, 491 U.S. at 797 (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985) ("[O]ur cases quite clearly hold that restrictions on the time, place, or manner of protected speech are not invalid 'simply because there is some imaginable alternative that might be less burdensome on speech.'") The denial of the Applications based on reasonable time, place, and manner restrictions did not result in a violation of Icon's constitutional right to freedom of speech.

Icon also argues Defendants could have declared unconstitutional the entire portion of the CDC relating to signs, thereby eliminating any restrictions on signs and either requiring the approval of the Applications or eliminating any need for approval.  As noted above, LUBA specifically addressed this argument in *Onsite* and determined Defendants properly severed the Exemption and denied Onsite's applications based on the constitutional restrictions found in the rest of the CDC.

Icon's argument that its First Amendment rights have been further violated by Defendants' refusal to act on Icon's administrative appeals appears to restate a claim for violation of its due process rights.   The court addressed this claim in detail in its previous Findings and Recommendation and determined that Icon failed to allege the requisite property interest in the approval of the Applications, a distinct deprivation of that property interest, or an entitlement to

damages for a mere delay in due process. *Icon Groupe,* 948 F. Supp. 2d. at 1211-1213.  Further, while Icon's administrative appeals were pending, Defendants and Icon participated in *Onsite*, which raised the identical issues facing Defendants and Icon, and resulted in a finding Defendants acted appropriately in denying Onsite's applications.  Defendants' failure to act timely on Icon's appeals allowed Icon to file a mandamus action, rather than an appeal to LUBA, eventually resulting in the court-ordered approval of some of the Applications.

In the absence of a vested right to approval of the Applications under the Exemption, Defendants' consideration of the Applications under the remaining provisions of the CDC, while not the least restrictive alternative, was a reasonable.  Defendants properly rejected the Applications for exceeding the content-neutral size and height restrictions found in the CDC.  Defendants' delay in acting on Icon's administrative appeal did not violate Icon's constitutional rights or result in recoverable damages.

### 3.  Standardless and Arbitrary Exercise of Discretion

Icon asserts the County has an unwritten policy giving officials arbitrary discretion to proscribe free speech rights.  Specifically, Icon argues the County allows its officials to disregard provisions of the CDC they deem unconstitutional.  As a result, Singelakis was allowed to reject the Applications based on his concern the Exemption was content-based and, therefore, unconstitutional.

First, the court is not convinced the evidence establishes Singelakis exercised any individual discretion in finding the Exemption unconstitutional.  Singelakis represented that while he agreed with the characterization of the Exemption as content-based and, therefore, unconstitutional, he did not make that decision.  (Isaak Decl. Ex. B at 6, 8.)  In fact, "the county made a determination for itself that a part of its own code was unconstitutional" and Singelakis just "signed off on it."  (Isaak

Decl. Ex. B at 7-8.)  Conway explained the land use staff and director decided to not apply the Exemption to the Applications, and that it was the "county's general practice, or at least the planning department's general practice to not apply provisions of the code that it deems are unconstitutional." (Isaak Decl. Ex. C at 5, 6.)  Even assuming this evidence creates a genuine issue of fact, Icon's argument fails because Singelakis did not exercise arbitrary discretion in applying the remaining parts of the CDC to the Applications.

While Singelakis's alleged authority to disregard the Exemption could have afforded him arbitrary discretion to violate Icon's free speech rights had Singelakis denied the Applications on this basis alone, that is not the case before the court.  Instead, Singelakis severed the Exemption and then considered the Applications under the remaining provisions of the CDC, specifically finding they exceed the size and height limitations for the relevant district.  Singelakis's decision complied with the constitutional restrictions found in the CDC.  Singelakis engaged in the same conduct LUBA determined was proper in *Onsite*.  The County's alleged unwritten policy of allowing its officials discretion to not implement provisions they deem unconstitutional did not result in a violation of Icon's constitutional rights to freedom of speech in this instance.

### 4. Pretextual Restriction on Speech

Icon alleges Defendants' stated reason for denying the Applications was pretextual.  Icon claims Defendants were not concerned about violating Icon's constitutional rights but, instead, were concerned about the type of messages Icon would communicate on the signs in the future.  In other words, Defendants denied the Applications based on Defendants' distaste for Icon's possible future use of the "safety signs" for commercial speech.

Again, the evidence offered does not necessarily establish Defendants denied the

Applications based on concerns Icon intended to use the Exemption to obtain approval for signs which would otherwise exceed the maximum size and height limits for commercial speech and then convert its use of the signs from non-commercial to commercial use within the near future.  A notation in the minutes from the Board's discussion of Ordinance 735 on July 13, 2010, generally notes it was "Counsel's" opinion that individuals seeking approval for billboards under the Exemption "would likely at some point contain advertising."  (Isaak Decl. Ex. I at 8.)  The comment was not directed to the Applications but was a general comment relating to all applicants.  Conway testified that he based this conclusion on information provided in the Applications, specifically the size, dimension, set backs, and the identity of the applicant, and he determined the signs probably would be used for advertising.  (Isaak Decl. Ex C. at 3.)[7]  However, there is no direct evidence Conway made the decision to ignore the Exemption and deny the Applications or that the decision was based on concerns about the future use of the signs.

Assuming this evidence raises a genuine issue of material fact, and viewing the evidence in the light most favorable to Icon, the nonmoving party, Defendants refused to honor the Exemption and considered the Applications under the remaining provisions of the CDC based on its concern Icon would eventually use the signs for commercial speech.  In other words, as a result of their concern, Defendants subjected Icon's non-commercial speech to restrictions imposed on commercial

---

[7]As it turns out, "Counsel" and Conway's concerns were well-founded.  Icon admitted that at the time it filed the Applications, "it intended to make the entire display face [of the signs] available, whether for compensation or not, immediately or at some point with two years of permit issuance, for content other than content related to a holiday(s) or safety." (Gilmore Decl. dated August 25, 2014, Ex. 10 at 4-7.)   On the other hand, Chris Daugherty, Vice President of Business Development for Total Outdoor, Inc., Icon's successor, represented that "Icon has a holiday and safety sign program which has been commended by the County's own sheriff for using its signs to promote public safety."  (Daugherty Decl. ¶ 2.)

speech.

Non-commercial speech, such as that communicated in safety signs, is afforded a greater degree of protection than commercial speech. "Municipalities stray beyond the boundaries of acceptable time, place and manner regulation when an ordinance favors commercial forms of speech over noncommercial speech." *Reed*, 587 F.3d at 981. The Exemption relieved specific non-commercial speech of the restrictions imposed by the CDC on commercial speech, thereby providing a greater degree of protection. However, because of concern Icon would eventually use the signs for commercial speech, Defendants ignored the Exemption and considered the Applications under the remaining provision of the CDC. In doing so, Defendants treated the Applications the same way it would treat applications for signs displaying commercial messages.

The court is aware that "merely treating noncommercial and commercial speech equally is not constitutionally sufficient" and that "regulations valid as to commercial speech may be unconstitutional as to noncommercial." *Id*. However, the size and height restrictions on which Defendants relied in denying the Applications have been found to be constitutional with regard to both commercial and non-commercial speech when the restrictions are content-neutral, narrowly tailored to further the interests of aesthetics and safety, and leave adequate channels of communication of the speech at issue, which is the case here. *See Reed*, 587 F.3d at 979-82 (sign code restrictions on time, place, and manner constitutional with regard to church's temporary directional signs); *Nat'l Adver.*, 861 F.2d at 249 (recognizing ban on non-commercial billboards in residential areas permitted "as long as all such billboards are banned and ample channels exist for communication of the information."); *Gaudiya Vaishnava Soc'y v. City and County of San Francisco*, 952 F.2d 1059, 1064-65 (9th Cir. 1991)(sale of merchandise with non-profit messages

affixed, was "pure speech" entitled to test for fully-protected speech in which "[t]ime, place and manner restrictions are valid only if they are content-neutral, narrowly tailored to serve a significant government interest, and retain ample alternative channels of communication.").

No matter the reason for Defendants' failure to approve the Applications under the Exemption, Defendants still reviewed the Applications under the remainder of the CDC, which contained valid time, place, and manner restrictions for both commercial and non-commercial speech. The Applications sought approval for signs which exceed the reasonable limitations imposed by the CDC and were properly rejected on this ground.

The court finds Defendants' denial of the applications was based on content-neutral restrictions on the time, place, and manner found in the County's applicable regulations and did not violate Icon's free speech rights. In the absence of a constitutional violation, the court need not address Defendants' arguments based on quasi-judicial immunity, qualified immunity, or discretionary immunity.

<em>Conclusion</em>

Defendants' motion (#70) for summary judgment is GRANTED.

DATED this 26th day of May, 2015.

/s/ John V. Acosta
JOHN V. ACOSTA
United States Magistrate Judge